HEARD NOVEMBER TERM, 1877.

## HEATH *vs.* STEELE.

Upon settlement between a guardian and the executor of his late ward, the guardian gave to the executor his note for a sum admitted to be due, but which was, in fact, more than he owed, and took from him a receipt as for so much money in full: *Held,* That the acceptance of the note discharged the guardian from all liability for the assets of the ward then in his hands—as; for instance, an unsatisfied judgment against a third person held by him as guardian.

A receipt does not in itself express the terms of any contract, and it may, therefore, be contradicted or modified by parol evidence.

BEFORE MACKEY, J., AT LANCASTER, JUNE, 1876.

The case is stated in the following decree of His Honor the Circuit Judge :

MACKEY, J. The bill in this cause was filed in 1867 for the purpose, mainly, of marshaling the assets and for the settlement of the estate of M. C. Heath, deceased, which was insolvent. Under the order calling in creditors, Mrs. Mary Jane Secrest, through her trustee, presented a claim which was referred to the Clerk for a special report. The matter was heard upon his report, filed the 26th day of July, 1875, exceptions of A. W. Heath, the administrator of the estate, and argument of counsel. From the report and the testimony taken by the Referce, it appears that James Daniel Steele died during his minority. He left a will, in which, after providing for payment of certain specific legacies, he bequeathed the entire residue of his estate to his sister, the claimant, Mrs. Mary Jane Secrest.

One John M. Steele was the regularly qualified executor of the will. It is not denied but that Mrs. Secrest, as sole residuary legatee, is entitled to whatever may now remain of the estate of the testator. The above named M. C. Heath was the guardian of the testator at the time of his death. He had invested a considerable portion of his ward's estate in a sealed note by S. B. Massey and James E. Cureton to him as such guardian, made payable for $2,270.83. Upon this note, March 19th, 1860, he obtained a judgment in the law Court against the said S. B. Massey for $1,717.43. On the 16th of October, 1860, John M. Steele, the executor of the ward, had a settlement with the guardian, Heath, in which the cash balance in the hands of the guardian was ascertained to be $2,213.45.

In this balance, however, was included the money due on the judgment against S. B. Massey. In the settlement, the guardian delivered to the executor his note, under seal, for said balance. This note of the guardian, under the proceedings above alluded to, was presented and established, subject to sundry credits for payments made by him in his lifetime, as a claim against his estate, the balance due thereon at the date of the report being $1,064.64.

In the settlement mentioned above the executor gave the guardian a *receipt in full* of the amount due the ward's estate, the sum therein specified being the amount for which the guardian's note was executed.

Since the death of the guardian, and since the filing of the bill in this cause, A. W. Heath, his administrator, has received, on the judgment against Massey, various sums of money, amounting in all to $1,112.22, the last payment having been made to him February 1st, 1872. Out of this money Mrs. Secrest, through her trustee, claims that she should be paid the $1,064.64 established by the executor of the ward against the estate of said M. C. Heath, deceased, in preference to other creditors of his estate. The Referee, in his report, recommends that this claim be allowed. To this report the administrator, A. W. Heath, has filed many exceptions, relying, however, mainly upon the Statute of Limitations as a bar to the claim.

In the judgment of the Court, lapse of time, in analogy to the Statute of Limitations, is not applicable as a bar to this claim. Even leaving out of view the sealed note of the guardian, given for the balance found to be due the ward's estate in the settlement, to which the statute could have no application, notwithstanding the receipt of the executor, the estate of the ward still retained an equitable claim to the money secured by the judgment against Massey, which nothing short of actual payment of the balance due by the guardian could defeat. The judgment, when it went into the hands of the administrator, remained subject to the same trusts which attached to it in the hands of the guardian. Such a trust could not be destroyed by the mere lapse of time. The money secured by the judgment was the ward's money when it was received by the administrator; it, or that portion of it which remains unpaid to the ward's estate, still belongs to the estate. A. W. Heath having received money which belongs to the estate of the ward is bound, in equity, to pay it over to the party to whom it was be-

queathed by the ward.—*Chaplin* vs. *Givens*, Rice Eq., 132; *Proctor* vs. *Gist*, Rich. Eq. Cas., 239; *Russell* vs. *Whilden*, id., 229.

Another ground of defense taken in the exception is that the administrator paid out a portion of this money before this claim was brought to his notice; but, having come into this Court for aid and advice in the settlement of the estate committed to his charge, if he saw proper to pay out the money without awaiting the sanction and direction of the Court, he must abide the consequences of his own rashness.

The exceptions are overruled, and the report of the Referee, with the recommendations therein contained, is confirmed and made the judgment of this Court.

It is therefore ordered that the claimant recover against the said A. W. Heath the sum of $1,064.64, with interest from the date of the report, and the costs thereupon, and that the administrator have credit for the same in his further accounting before this Court.

The plaintiff appealed upon the following amongst other grounds:

1. That the claim of Mrs. Secrest is barred by the settlement made and the receipt passed on the 16th of October, 1860.

2. Because the note given on the 16th October, 1860, has already been established against the estate of M. C. Heath, and, if the decree be allowed to stand, the same amount will have been twice established against it.

*Kershaw, Allison & Connors*, for appellants:

*First.* Is this claim barred by the settlement and receipt in full given by John M. Steele, executor, to M. C. Heath, guardian?

(*a.*) A receipt in full is conclusive evidence of payment, but may be rebutted. The *onus* is upon the party seeking to avoid it.—*Dobbin* vs. *Perry*, 1 Rich. Law, 33.

(*b.*) Where a new note is taken for an antecedent debt, the question is, was it intended as payment?—*Townsend & Arnold* vs. *Stephenson & Walker*, 4 Rich. Law, 59; *Bank* vs. *Bobo*, 9 Rich., 31. The circumstances show that it was so intended in this case.

1. Steele had his choice either to take the judgment or throw it upon the hands of the guardian. Heath deliberately chose the latter.

2. The same day he received on the note taken in settlement *more money* than the judgment amounted to. It was a better settlement, therefore, than if he had taken the judgment.

3. The settlement was made in the office of the Commissioner in Equity, and statement thereof and the receipt placed on file in the office. It was really an accounting and settlement before the Commissioner.

4. The parties again elected to stand by the settlement, and reaffirmed it by establishing the note as a claim against the estate of M. C. Heath.

*Second.* Is this claim barred by the Statute of Limitations? It was barred within four years from the day of settlement, unless there were intervening disabilities. No action was taken for fourteen years after the settlement. In a settlement of an estate by an administrator before the Ordinary, it was held that the parties were barred by the statute after four years.—*Payne* vs. *Harris*, 3 Strob. Eq., 42. If an executor or other trustee does an act purporting to be a full execution of the trust, the statute will be applied from that time, as in cases of implied trusts.—*Moore* vs. *Porcher*, Bail. Eq., 195; *Long* vs. *Cason*, 4 Rich. Eq., 60; *Sollee* vs. *Croft*, 7 Rich. Eq., 34.

A husband who had administered on his deceased wife's estate made a final return to the Ordinary, in which he declared, in effect, that the estate was wound up, and that he had transferred all the assets to himself as sole owner, and the Ordinary certified to the return as a final settlement: *Held*, That this transaction in a public office and remaining there as of record gave currency to the Statute of Limitations, and that a bill for an account, filed more than four years afterwards, was barred.—*Colburn* vs. *Holland*, 14 Rich. Eq., 176.

*Third.* Can the claimant maintain an exclusive right to the proceeds of this judgment? It was founded on a note payable to M. C. Heath, guardian.

Where a similar note, after the death of the guardian, had come into the hands of his administrator, his title was held good to the proceeds as against the ward and her husband.—*McCall and Wife* vs. *Weatherby*, 5 Strob. Law, 73.

The case proceeds upon the principle that the legal title is in the guardian and the administrator succeeds to it. It becomes legal assets in his hands and must be so administered.

It is true, equity will follow trust funds and subject them to the trust whenever they can be traced and distinguished.—*McNeil* vs. *Morrow,* Rich. Eq. Ca., 175.

The rule applies when the trust fund has been converted into something specific, but ceases when the subject is turned into money and mixed and confounded in a general mass of the same description.—2 Maule & Selwyn, 575.

In this case the money has been collected by the administrator, with other assets of the estate, and most of it paid out in due course of administration. Suppose the judgment had been collected by the intestate,—could the respondents claim to be paid the amount in preference to all other creditors? Upon what principle does the present case differ?

*Fourth.* In any event, the decree is erroneous, because the administrator cannot be held liable for more than the balance ascertained to be in his hands by the report confirmed October 12, 1869, *plus* $533.09, *minus* the costs ordered to be paid by him June 10, 1869.

The subsequent claim of respondents cannot alter those matters already adjudicated in the cause.

*Moore,* contra:

1. The contest is simply one amongst creditors of the estate of M. C. Heath, deceased.

2. There can be no question but that the judgment against Massey, when obtained by the guardian, constituted a part of the ward's estate.

3. The note given by the guardian to the executor of the ward in the settlement of October 16th, 1860, did not operate as a payment of the balance due the ward's estate.— *Wardlaw* vs. *Grey,* 2 Hill Ch., 644.

4. The receipt given by the executor in that settlement did not, therefore, operate as a transfer of the judgment against Massey to the guardian in his individual character so as to destroy his trust relation to the same. The judgment continued to be a part of the ward's estate, subject to an equity on the part of the guardian to reimbursement out of the same for any money which he might pay either to his ward or otherwise.

5. But when it appears that the guardian is indebted to the ward the securities held by him for the ward will be subjected to the pay-

ment of the indebtedness, even against creditors of the guardian.— *Glass* vs. *Baxter*, 4 DeS., 153; *Miller* vs. *Alexander*, 1 Hill Ch., 25.

It follows, hence, that there was no error in the judgment of the Court against the plaintiff, A. W. Heath, for so much of the money received by him on the judgment against Massey as remained due on the note of the guardian to the executor of the ward.

January 8, 1878. The opinion of the Court was delived by

WILLARD, C. J. The nature of the present question and the circumstances under which it arises are sufficiently stated in the opinion of the Circuit Judge.

The decree appealed from establishes certain assets in the hands of the plaintiff administrator as trust funds, withdrawing them from the general funds of the insolvent intestate estate, subject to ratable distribution among creditors, and devotes them to the satisfaction of the trusts thus established. It holds that the funds in controversy represent the estate of a ward of whom the intestate was guardian, and that they retain that character in the hands of the administrator of the intestate guardian.

The precise question is whether a settlement that took place between the guardian in his lifetime and the executor of the ward operated to extinguish the fiduciary relation of guardian and ward as affecting the portion of the estate of the guardian in the hands of the administrator that originally formed part of the ward's estate.

The principal assets formerly belonging to the ward's estate that came into the hands of the administrator was a judgment recovered by the guardian on a note in which his ward's money was invested.

An accounting, purporting in form to be a final accounting, took place between the guardian and the executor of the ward in the office of the Commissioner in Equity, at which time the guardian gave his individual note for the amount of the estate of the ward, including the amount due on the judgment, whereupon the following receipt was signed by the executor of the ward:

SOUTH CAROLINA, LANCASTER COUNTY.

Received from Moses Chappel Heath, the Chancery guardian of James Daniel Steele, deceased, $2,213.45 in full, the sum or amount due by said M. C. Heath, guardian, as aforesaid, to James Daniel Steele, deceased, agreeable to the returns of said Heath, filed in the

Commissioner's office, and settlement by said Commissioner. Received by me, John M. Steele, executor of said James Daniel Steele, deceased.

JOHN M. STEELE, Executor.

OCTOBER 16, 1860.

The foregoing receipt was delivered to the guardian and placed on file in the office of the Commissioner in Equity with the guardian's returns. The receipt is not in itself conclusive proof of the fact of payment, but parol evidence may be admitted to contradict or modify it.— *Wardlaw* vs. *Gray*, 2 Hill Ch., 644; *Tobey* vs. *Barber*, 5 Johns. Rep., 68; *House* vs. *Low*, 2 Johns. Rep., 379; *Putnam* vs. *Lewis*, 8 Johns. Rep., 389.

In itself a receipt does not express the terms of any contract or uniting of the minds of the parties between whom it has passed, but merely evidences by way of admission the fact stated in it; consequently it is not governed by the rules that prescribe the effect of instruments adopted by parties as the special means of evidencing some compact or understanding had between them, but, like evidence, not enjoying any special privilege, it is capable of being contradicted or modified by other classes of evidences.

The question then is, whether there is evidence to show that the guardian and the executor of his ward agreed, upon consideration, that the individual note of the guardian should be taken in full discharge of all claims upon him in behalf of the ward's estate. Such an agreement is competent to discharge the pre-existing obligation by the substitution of a new obligation therefor.— *Townsend* vs. *Stephenson*, 4 Rich., 59; *Burton* vs. *Pressley*, Cheves Eq., 1.

But, independent of such an agreement, supported by consideration, the mere fact of taking a note of the debtor, or, perhaps, even of a third person, does not discharge the pre-existing debt, but the new obligation is treated as a collateral security.— *Barretti* vs. *Brown*, 1 McC., 449; *Wardlaw* vs. *Gray*, 2 Hill Ch., 644; *Tobey* vs. *Barber*, 5 John. Rep., 68; *Bank* vs. *Bobo*, 9 Rich., 31; *Putnam* vs. *Lewis*, 8 Johns. Rep., 389.

On this question the receipt is entitled to weight, though not conclusive. Its language clearly expresses an understanding on the part of the executor of the ward, who signed it in accordance with the idea that the note of the guardian was taken in lieu of all other demands, present or future, against the guardian on account of the estate of his ward that came into his hands.

No evidence of a direct character has been introduced to impeach the receipt as to it truthfully representing the intentions of the parties. The note given by the guardian was in excess of what was then due from him to the executor of the ward.

The judgment was still unpaid to a large extent, yet the note given in settlement included the whole amount of the judgment, without regard to what was paid or unpaid.

If the statement of the receipt is accepted, then the intention of this transaction is obvious; for in that case it would amount to a substitution, by the parties, of the absolute personal obligation of the guardian for any demand that the executor of the ward might have for the estate of the ward or its proceeds in the hands of the guardian. If the view of the case presented by the receipt be rejected, then the action of the guardian in assuming an obligation in excess of that imposed upon him by law is unintelligible. The giving of the note by the guardian must then be regarded as supporting the statement that the parties agreed that such note should be taken in lieu of all other claims against the guardian, and it is also proof of an adequate consideration to support such agreement. The holder of the note, as such, under such circumstances, has no greater claim upon the administrator of the guardian than other creditors of the same class and must come in ratably with them.

No question is made in this case whether the parties are entitled to resort to the bond of the guardian in case of non-payment of the note, and therefore has not been considered.

It is not necessary to examine the question as to the Statute of Limitations in its application to the present case, which would have been appropriate had the parties representing the ward's estate interposed with a direct application to vacate the settlement upon grounds cognizable in equity. The present question does not involve the validity of that settlement, but merely the intention of the parties in making it.

The order appealed from must be set aside, and the case remanded to the Circuit Court for an order allowing the petitioners, the respondents, to come upon the assets of the intestate estate subject to distribution ratably with other creditors of the same class with themselves.

*McIver*, A. J., and *Haskell*, A. J., concurred.